(No. 20093.—)

M. D. COLP *et al.* Plaintiffs in Error, *vs.* THE FIRST BAP-
TIST CHURCH OF MURPHYSBORO *et al.* Defendants in
Error.

*Opinion filed October 25, 1930.*

L. A. COLP, and WHITE & QUINDRY, for plantiffs in
error.

FRED G. BIERER, ISAAC K. LEVY, DAVID B. LEVY, and
LAWRENCE A. GLENN, for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

During March, 1925, the church building of the First
Baptist Church of Murphysboro, Illinois, was partially de-
stroyed by a tornado and fire. In May, 1926, the church
corporation through its trustees made a written agreement
with William Jolly, a local building contractor, to recon-
struct the church. The contract was completed during

June, 1927, and a dispute having arisen between Jolly and
the church officers as to the amount of the balance due
him, he filed an action against the church to collect the
amount which he claimed. During September, 1927, the
Colp Lumber Company filed a bill in the circuit court of
Jackson county against Jolly, the First Baptist Church of
Murphysboro, its several trustees, and certain other parties,
defendants, to enforce a mechanic's lien. The bill alleged,
in substance, that the building materials set forth in its
schedule marked "Exhibit A" and attached to and made a
part of the bill were delivered to Jolly for the purpose of
being used, and were "used, in the erection and construc-
tion of said building," and further alleged there was a bal-
ance due to the lumber company from the contractor and
the church in amount of $5950.68. The schedule appears
to be an itemized statement of all building materials de-
livered to the contractor, the total of which was $20,049.16,
and after deducting certain credits of cash and merchan-
dise the balance shown to be unpaid is the amount previously
stated. All the defendants to the bill, except the contractor,
filed joint and several answers, in which practically all of
the material allegations of the bill were denied. The an-
swers alleged that a large amount of the building materials
for which a lien was claimed was not used in the construc-
tion of the building. The cause was referred to a master
in chancery to take the proof and report his conclusions of
law and fact. The lumber company offered evidence to
show that all the lumber and other building materials set
forth in the itemized schedule attached to and forming a
part of the bill were actually delivered to the premises upon
which the old structure was situated, for the purpose of
being used in the reconstruction of the church building.
The testimony of a well-informed local contractor, and
also of an experienced local carpenter, was presented, and
this proof was to the effect that they had made examination
and measurements of the completed building, from which

they could estimate with reasonable accuracy the amount of materials that had been used in the construction of the building, and that there was not as much two-inch lumber, one-inch lumber, maple flooring, pine flooring and face-brick in the completed structure as the lumber company claimed had been delivered to the premises and were used in the re-building of the church. Upon completion of the hearing before the master he made his report finding the correct balance claimed by the Colp Lumber Company to be $5889.68; that there should be deducted therefrom for building materials which were not and could not have been used in the reconstruction of the church, the following items: 2350 feet of pine flooring, making an overcharge of $188; 6974 feet of maple flooring, making another overcharge of $897.34; and 49,751 face-brick, making a further overcharge of $1691.53. The total overcharge was $2776.87 as found by the master, and he recommended that a decree be entered in favor of the lumber company in amount of $3112.81. Objections to the master's report were overruled and stood as exceptions before the chancellor. The exceptions were overruled and a decree was entered in favor of the Colp Lumber Company against William Jolly, the contractor, for $3112.81, with five per cent interest from a certain date, and a lien preferred as to certain other parties was authorized against the church property for $3112.81, with order of sale in case of default in payment within sixty days. An appeal was taken to the Appellate Court for the Fourth District, where the decree of the trial court was affirmed. This court, under *certiorari* proceedings, granted leave to the Colp Lumber Company, a co-partnership composed of several persons, to bring the cause here for review.

It is the contention of the lumber company that under section 7 of the Mechanic's Lien act (Smith's Stat. 1929, chap. 82, p. 1814,) a lien is not defeated although it is shown that part of the building materials was not actually

used in the building, provided it is shown that such materials were delivered at the place where the building was being constructed, for the purpose of being used in the construction of the building. The lumber company insists that if the proof of delivery of building materials on the premises for the purpose of being used in the building being erected thereon precludes a defense that the materials were not actually used in the building, then the testimony of the contractor and carpenter in this case was incompetent and the motion to strike that testimony from the record should have been granted, and that without such testimony the decree of the trial court and the judgment of the Appellate Court cannot be sustained.

That part of section 7 of the Mechanic's Lien act here involved is as follows: "No such lien shall be defeated to the proper amount thereof because of an error or overcharging on the part of any person claiming a lien therefor under this act, unless it shall be shown that such error or overcharge is made with intent to defraud; nor shall any such lien for material be defeated because of lack of proof that the material after the delivery thereof, actually entered into the construction of such building or improvement, although it be shown that such material was not actually used in the construction of such building or improvement: *Provided,* it is shown that such material was delivered either to said owner or his agent for such building or improvement, to be used in said building or improvement, or at the place where said building or improvement was being constructed, for the purpose of being used in construction or for the purpose of being employed in the process of construction as a means for assisting in the erection of the building or improvement in what is commonly termed forms or formwork where concrete, cement or like material is used, in whole or in part."

The purpose of such a statute is to permit a lien upon premises where a benefit has been received by the owner

and where the value or condition of the property has been increased or improved by reason of the furnishing of labor and materials. In considering the Mechanic's Lien act this court said in *Hoier* v. *Kaplan,* 313 Ill. 448: "Prior to the revision of the Mechanic's Lien law in 1895 it was well settled that a lien for materials could be enforced only to the extent of their actual use in the construction of the building or improvement. (*Compound Lumber Co.* v. *Murphy,* 169 Ill. 343.) Material might be used or work performed in processes of construction which would not come within the act. * * * In *Rittenhouse & Embree Co.* v. *Brown & Co.* 254 Ill. 549, it was held that material used in making forms into which concrete was poured did not come within the provisions of the statute since the material had not become a part of the completed structure. In 1913 the act was amended by including within its scope 'forms or formwork used in the process of construction where cement, concrete or like material is used.' This amendment authorized a lien for such forms when used in the process of construction in the manner specified even though they did not become a part of the completed building or improvement. Before a lien could be enforced for such forms it became necessary to amend the statute by making specific provision for them, and until such provision was made their use in the process of construction afforded no basis for a lien. The rule of strict construction was consistently applied. Section 7 of the Mechanic's Lien act, as amended in 1913, permits the enforcement of a lien, within certain limitations, if 'it is shown that such material was delivered either to said owner or his agent for such building or improvement, to be used in said building or improvement, or at the place where said building or improvement was being constructed, for the purpose of being used in construction or for the purpose of being employed in the process of construction as a means for assisting in the erection of the building or improvement in what is com-

monly termed forms or formwork where concrete, cement or like material is used, in whole or in part.' The words 'to be used in said building or improvement,' and 'for the purpose of being used in construction,' have a more direct and immediate relation to the improvement than do the words 'for the purpose of being employed in the process of construction as a means for assisting in the erection of the building,' etc. 'Used in said building or improvement' and 'used in construction' denote use as a part of the construction so that the material becomes a part of the completed structure. (*Rittenhouse & Embree Co.* v. *Brown & Co. supra.*) The words 'used in the process of construction' were not in the act before the amendment of 1913, and are specifically limited to 'forms or formwork where concrete, cement or like material is used.' " In the same opinion it was said: "The lien is provided by statute and not by contract, and unless the statute, under the rule of strict construction, creates the lien none can be asserted or maintained. The remedy by mechanic's lien is in addition to the ordinary remedies afforded by the common law and is a privilege enjoyed by one class of the community above other classes. A party seeking to enforce such a lien must bring himself strictly within the terms of the statute."

Plaintiffs in error in their bill alleged that the building materials set forth in their schedule "Exhibit A" were delivered to the contractor for the purpose of being used, and were used, in the erection and construction of the church building. The church and its officers denied these allegations in their answers, and contended at the hearing and as was found by the master that plaintiffs in error had charged the contractor for more materials than could possibly have been used in the reconstruction of the building. The uncontradicted proof was that there were 40,189 face-brick actually used in the building, but there was a charge and claim made by the lumber company for 89,940 face-brick. There was no effort whatever made to discredit the

witnesses offered by the church to show that a large amount of materials was not and could not have been used in the reconstruction of the building. This evidence we think was properly admitted under the pleadings.

Plaintiffs in error rely upon *Keeley Brewing Co.* v. *Decorating Co.* 194 Ill. 580, in support of the above contention. That case is clearly distinguishable from the one at bar. In the *Keeley case* there was no defense made by the pleadings that the building materials were not and could not have been used in the construction of the building in question.

We think the only reasonable construction or meaning of that part of section 7 of the Lien act here involved and previously quoted herein is that the materialman is relieved, in the first instance, from the burden of proving that the materials, the subject matter of the lien, actually entered into the construction of the building, and that proof of delivery to the owner or his agent or of delivery at the place where such building was being constructed would constitute proof *prima facie* of that fact. The evident intention of the act was to relieve the materialman from the hardship of being compelled in the first instance to make proof that such materials were in fact used in the construction of the building, but it does not go to the extent of precluding the owner of the premises from rebutting, by competent evidence, the fact, if such is the fact, that the materials were not delivered for the purpose of use in the construction of the building. Delivery of the materials is not conclusive of the right to a lien, and no lien can be allowed when the proof demonstrates that such materials were not delivered for use in the construction of the building. Any other interpretation of the statute would permit gross injustice and fraud to be practiced upon innocent property owners.

We are of opinion that the judgment of the Appellate Court was correct, and it will therefore be affirmed.

*Judgment affirmed.*